## UNITED STATES v. WELSH.

### (District Court, S. D. New York. December 27, 1917.)

1. CRIMINAL LAW ⟺395—FEDERAL OFFICERS—WHO ARE.

Where a custom house guard requested a private detective to act for him during his temporary absence, and the detective searched accused and found that he was unlawfully bringing into the United States a letter, the detective must, in a prosecution against accused, be treated as a United States officer pro hac vice.

2. CRIMINAL LAW ⟺395—UNLAWFUL SEARCH—EFFECT.

Though Const. Amends. 4, 5, declare that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and that no person shall be compelled in any criminal case to be a witness against himself, yet where defendant, unlawfully bringing into the United States a letter, was seized and the letter taken from his person by one acting for an officer of the United States, the letter may be used against him in a criminal prosecution therefor; for, the gist of the offense being the bringing of the letter into the United States, defendant does not come within the protection of the constitutional provisions.

Thomas Welsh was indicted for bringing into the United States a letter, and he moves to quash the indictment, and for return of the letter. Motions denied.

Martin Conboy, of New York City, for petitioner.

Francis G. Caffey, U. S. Atty., and James W. Osborne, Second Asst U. S. Atty., both of New York City.

AUGUSTUS N. HAND, District Judge. The defendant, a seaman on board the steamship Celtic, was going ashore when a detective named McGinnis, employed by the steamship company, asked him if he

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

had any letters on his person. He replied that he had not. Thereupon McGinnis searched him, felt papers in his right hip pocket, and asked him to show the papers. Welsh then took a letter out of his pocket and delivered it to McGinnis, but immediately thereafter seized it, tore it in two, and threw it on the ground. McGinnis picked it up and delivered it to one Martin, the customs guard. It was eventually turned over by the Treasury Department to the District Attorney, and upon it the defendant was indicted for unlawfully bringing in the letter. The defendant moves for the return of the letter on the ground that the seizure was contrary to the Fourth and Fifth Amendments of the Constitution.

[1] His counsel argues that under the cases of Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and Flagg v. United States, 233 Fed. 481, 147 C. C. A. 367, the evidence thus procured could not be used against the defendant. I do not think the government can rest upon the proposition that it was not liable for the acts of McGinnis, because he was a private detective. Martin, the custom house guard, appears to have asked him to act for him while he was temporarily absent, and in the search he must be regarded as a government official pro hac vice.

[2] But, assuming this to be the fact, the cases quoted do not apply to the present situation. They only go so far as to hold that private books and papers cannot be seized and used as incriminating evidence. The corpus delicti itself has not, I think, been held incapable of detention and production to establish the crime. If the defendant is right, testimony of a witness of a murder, though furnishing the only evidence, would be excluded, and the corpse could not be presented before the coroner's jury, if the witness discovered the murder by rushing into a house without a search warrant, where he heard cries of distress. Here the letter is in no real sense the property of the defendant, but is the very unlawful thing imported contrary to the statute.

I think the District Attorney is right in urging that any one could arrest the person carrying it, who was thus committing a felony in his presence. To be sure, the man making the arrest did not know that a felony was being committed. He took the risk of civil and perhaps criminal actions for assault and battery if his suspicions turned out to be without foundation; but in this case it appears on the face of the indictment, and from the evidence adduced, that the suspicions were well founded, and the defendant was engaged in the commission of a felony. The constitutional safeguards against self-incrimination do not prevent the arrest of men engaged in the commission of crimes, or the seizure of property whereby the crime is being effected.

The motion for the return of the letter must be denied.